**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 DEFERRED COMPENSATION EMPLOYEE SAVINGS TRUST; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 EDUCATIONAL TRAINING FUND; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 POLITICAL EDUCATION FUND; and INTERNATIONAL UNION OF OPERATING ENGINEERS OF CHICAGO, ILLINOIS AND VICINITY LOCAL NO. 399, | ) | CASE NO.: 26-cv-11754 |
| Plaintiffs, | ) | JUDGE: |
| vs. | ) | MAGISTRATE JUDGE: |
| IT CHICAGO HOLDINGS LLC, a Delaware Limited Liability Company; and EUGENE STAPLES, an Individual, | ) | |
| Defendants. | ) | |

**COMPLAINT**

NOW COME Plaintiffs, the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST ("Welfare Fund"), the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 DEFERRED COMPENSATION EMPLOYEE SAVINGS TRUST ("Savings Fund"), the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 EDUCATIONAL TRAINING FUND ("ETF"), (collectively "Trust Funds"), the INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 POLITICAL EDUCATION FUND ("PEF"), and the INTERNATIONAL UNION

OF OPERATING ENGINEERS OF CHICAGO, ILLINOIS AND VICINITY LOCAL NO. 399 ("Union"), by and through their attorneys, JOHNSON & KROL, LLC, and complain of the Defendants, IT CHICAGO HOLDINGS LLC ("IT Chicago"), and EUGENE STAPLES ("Staples"), as follows:

**JURISDICTION AND VENUE**

1. Counts I and III of this action arise under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA") (29 U.S.C. §§ 1132 and 1145). The Court has jurisdiction over the subject matter pursuant to 29 U.S.C. §§ 1132 and 1145, as well as 28 U.S.C. § 1331.

2. Count II of this action arises under Section 301 of the Labor Management Relations Act (hereinafter referred to as the "LMRA") (29 U.S.C. § 185). The Court has jurisdiction over the subject matter of Count II pursuant to 29 U.S.C. § 185.

3. Count IV of this action alleges common law tortious conversion against the individual Defendant, Staples. The Court has supplemental jurisdiction over the subject matter of Count IV pursuant to 28 U.S.C. § 1367.

4. Counts V and VI of this action arise under the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq*.). The Court has supplemental jurisdiction over the subject matter of Counts V and VI pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) in that the Trust Funds are administered at 2260 S. Grove Street, Chicago, Illinois, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the Plaintiffs' claim occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

6. The Trust Funds receive contributions from numerous employers pursuant to collective bargaining agreements negotiated between the Union and employers, and are therefore multiemployer plans under 29 U.S.C. § 1002.

7. The PEF is a political action committee that is administered in Chicago, Illinois.

8. The Union is the bargaining representative of Defendant IT Chicago's bargaining-unit employees.

9. Defendant IT Chicago is a Delaware limited liability company with its principal address at 7222 Cermak Road, Suite 403 in North Riverside, Illinois.

10. Defendant IT Chicago operates the building located at 8550 W. Bryn Mawr Avenue in Chicago, Illinois (hereinafter, the "International Towers Building").

11. Defendant Staples is a Manager and Member of IT Chicago.

## COUNT I
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT – CONTRIBUTIONS

12. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-11 of this Complaint with the same force and effect as if fully set forth herein.

13. On December 1, 2023, but effective as of September 8, 2023, IT Chicago signed a Collective Bargaining Agreement ("CBA") with the Union which covered bargaining-unit work performed at the International Towers Building through June 30, 2026. (A copy of the CBA is attached as **Exhibit 1**).

14. Pursuant to the CBA, IT Chicago became bound by the terms of the Amended Restated Trust Agreement ("Welfare Trust Agreement"), which created the Welfare Fund; the Agreement & Declaration of Trust ("Savings Fund Trust Agreement"), which created the Savings Fund; and the Amended and Restated Agreement & Declaration of Trust ("ETF

Trust Agreement"), which created the ETF.

15. The Welfare Fund, Savings Fund, ETF, and Union adopted a Restated Collection and Audit Policy ("Collection Policy") to administer the collection of contributions and union dues from contributing employers. (A copy of the Collection Policy is attached as **Exhibit 2**).

16. Pursuant to the provisions of the CBA, the Welfare Trust Agreement, and the Collection Policy, IT Chicago is required to pay monthly contributions to the Welfare Fund for all bargaining-unit employees.

17. Welfare Fund contributions are billed in the third week of the month preceding the month being billed, and payment is due the first day of the month following the month being billed.

18. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the Welfare Fund's Trust Agreement, and the Collection Policy, employers who fail to submit their monthly contributions to the Welfare Fund within ninety (90) days of the due date are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

19. IT Chicago failed to submit contributions to the Welfare Fund for the months of October 2025 through July 2026, in the aggregate amount of $19,742.56.

20. As a result of IT Chicago's failure to submit contributions to the Welfare Fund for October 2025 through May 2026 within ninety (90) days of the due date, IT Chicago owes the Welfare Fund liquidated damages totaling $1,637.99.

21. Pursuant to the provisions of the CBA, the Savings Fund's Trust Agreement, and the Collection Policy, IT Chicago is required to deduct elective deferrals from the paychecks

of participating bargaining-unit employees and remit payment of those elective deferrals to the Savings Fund by the fifteenth (15th) day of the month following the month in which the elective deferrals were withheld.

22. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the Savings Fund's Trust Agreement, and the Collection Policy, employers who fail to submit elective deferrals to the Savings Fund by the fifteenth (15th) day of the month following the month in which the elective deferrals were withheld are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, interest equal to ten percent (10%) per annum from the due date until the payment is received, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

23. Upon information and belief, IT Chicago failed to submit elective deferrals to the Savings Fund for the months of December 2025 and January, February, March, April, May, June, and July 2026 in an unknown amount.

24. Upon information and belief, as a result of IT Chicago's failure to timely submit elective deferrals to the Savings Fund for December 2025 and January, February, March, April, May, June, and July 2026, IT Chicago owes the Savings Fund liquidated damages and interest in an unknown amount.

25. Pursuant to the provisions of the CBA, the ETF's Trust Agreement, and the Collection Policy, IT Chicago was required to pay annual contributions to the ETF for all active, full-time, bargaining-unit employees as of July1, 2024, and July 1, 2025.

26. IT Chicago has a continuing obligation to pay annual contributions to the ETF for all active, full-time, bargaining-unit employees as of July 1, 2026.

27. Pursuant to Section 502(g)(2) of ERISA (29 U.S.C. § 1132), provisions of the CBA, the

ETF's Trust Agreement, and the Collection Policy, employers who fail to submit their annual contributions to the ETF within ninety (90) days of the due date are responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus reasonable attorney's fees, and costs associated with collecting delinquent contributions and liquidated damages.

28. IT Chicago failed to submit annual contributions for 2024 totaling $3,360.00 to the ETF for its active, full-time employees as of July 1, 2024.

29. IT Chicago failed to submit annual contributions for 2025 totaling $2,656.00 to the ETF for its active, full-time employees as of July 1, 2025.

30. IT Chicago failed to submit annual contributions for 2026 totaling $1,328.00 to the ETF for its active, full-time employees as of July 1, 2026.

31. As a result of IT Chicago's failure to submit annual contributions for 2024 and 2025 to the ETF within ninety (90) days of the due date, IT Chicago owes the ETF liquidated damages totaling $601.60.

32. Due to IT Chicago's continuing obligation to pay contributions and transmit elective deferrals to the Funds on behalf of its bargaining-unit employees, additional amounts may become due and owing by IT Chicago.

33. Plaintiffs have been required to employ the undersigned attorneys to collect the monies that are due and owing from IT Chicago.

34. IT Chicago is obligated to pay the reasonable attorney's fees and court costs incurred by the Plaintiffs pursuant to the CBA, Trust Agreement, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE**, Plaintiffs respectfully request:

A. That Judgment be entered in favor of the Welfare Fund and against IT Chicago in the aggregate amount of $21,380.49 for its breach of the CBA for the months of October 2025 through July 2026, itemized as follows:

i. $19,742.56 in unpaid contributions; and

ii. $1,637.99 in liquidated damages;

B. That this Honorable Court enter an order requiring IT Chicago to submit payroll reports to the Savings Fund detailing the elective deferrals withheld for the months of December 2025 and January, February, March, April, May, June, and July 2026;

C. That Judgment be entered in favor of the Savings Fund and against IT Chicago for all elective deferrals, liquidated damages, and interest found to be due and owing based on the reports showing elective deferrals for the months of January, February, March, April, May, June, and July 2026;

D. That Judgment be entered in favor of the ETF and against IT Chicago in the aggregate amount of $7,945.60 for its breach of the CBA for all active, full-time, bargaining-unit employees as of July 1, 2024, July 1, 2025, and July 1, 2026, itemized as follows:

i. $7,344.00 in unpaid annual contributions; and

ii. $601.60 in liquidated damages;

E. That this Honorable Court enter Judgment in favor of Plaintiffs and against IT Chicago for any amounts discovered to be owed in addition to those set forth in Paragraphs A through D above;

F. That IT Chicago be ordered to pay the reasonable attorney's fees and costs incurred by Plaintiffs pursuant to the CBA, Trust Agreements, Collection Policy, and 29 U.S.C. § 1132(g)(2)(D); and

G. That Plaintiffs have such other and further relief as the Court may deem just and equitable, all at IT Chicago's cost pursuant to 29 U.S.C. § 1132(g)(2)(E).

**COUNT II**
**BREACH OF THE COLLECTIVE BARGAINING AGREEMENT – UNION DUES AND AUTHORIZED DEDUCTIONS**

35. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-34 of this Complaint with the same force and effect as if fully set forth herein.

36. On December 1, 2023, but effective as of September 8, 2023, IT Chicago signed a Collective Bargaining Agreement ("CBA") with the Union which covered bargaining-unit work performed at the International Towers Building through June 30, 2026. (**Exhibit 1**).

37. The Union adopted the Collection Policy to administer the collection of contributions and union dues from contributing employers. (**Exhibit 2**).

38. Pursuant to the provisions of the CBA and Collection Policy, IT Chicago is required to deduct dues from participating bargaining-unit employees and remit such dues to the Union no later than the twentieth (20th) day of the following month after such deductions were made.

39. Pursuant to the provisions of the CBA and Collection Policy, employers who fail to pay dues to the Union by the due date twice in a twelve (12) month period are responsible for liquidated damages equal to five percent (5%) per month, plus interest of two percent (2%) per month.

40. IT Chicago failed to timely remit dues to the Union for the months of February, March, April, May, June, and July 2026, in the aggregate amount of $686.50.

41. As a result of IT Chicago's failure to remit dues for the months of February, March, April, May, June, and July 2026 to the Union twice within a twelve (12) month period, IT Chicago currently owes the Union liquidated damages totaling $119.64.

42. As a result of IT Chicago's failure to timely submit dues to the Union for the months of February, March, April, May, June, and July 2026, IT Chicago currently owes the Union interest totaling $47.86.

43. IT Chicago has a continuing obligation to deduct and remit dues to the Union on behalf of its bargaining-unit employees; therefore, additional amounts will become due and owing by IT Chicago.

44. Pursuant to the provisions of the CBA, IT Chicago is required to deduct voluntary and authorized deductions from participating bargaining-unit employees on a monthly basis and remit such deductions to the PEF.

45. IT Chicago failed to remit deductions to the PEF for the months of January, February, March, April, May, June, and July 2026, in the aggregate amount of $175.00.

46. IT Chicago has a continuing obligation to deduct voluntary and authorized deductions from participating bargaining-unit employees on a monthly basis and remit such deductions to the PEF; therefore, additional amounts will become due and owing by IT Chicago.

47. The Union and PEF have been required to employ the undersigned attorneys to collect the monies that are due and owing from IT Chicago.

48. IT Chicago is obligated to pay the reasonable attorney's fees and court costs incurred by the Union pursuant to the CBA and Collection Policy.

**WHEREFORE**, the Union respectfully requests:

A. That Judgment be entered in favor of the Union and against IT Chicago in the aggregate amount of $853.99 for its breach of the CBA for the months of February, March, April, May, June, and July 2026, itemized as follows:

i. $686.50 in dues;

ii. $119.64 in liquidated damages; and

iii. $47.86 in interest;

B. That Judgment be entered in favor of the PEF and against IT Chicago in the aggregate amount of $175.00 for its breach of the CBA for the months of January, February, March, April, May, June, and July 2026;

C. That this Honorable Court enter Judgment in favor of the Union and PEF and against IT Chicago for any amounts discovered to be owed in addition to those set forth in Paragraphs A and B above;

D. That IT Chicago be ordered to pay the reasonable attorney's fees and costs incurred by the Union and PEF; and

E. That the Union have such other and further relief as the Court may deem just and equitable all at IT Chicago's cost.

**COUNT III**
**BREACH OF FIDUCIARY DUTY – EUGENE STAPLES**

49. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-48 of this Complaint with the same force and effect as if fully set forth herein.

50. Pursuant to the provisions of the CBA, the Savings Fund's Trust Agreement, and the Collection Policy, IT Chicago is required to deduct elective deferrals from the paychecks of participating bargaining-unit employees and remit payment of those elective deferrals to the Savings Fund by the fifteenth (15th) day of the month following the month in which the deductions were made.

51. Section 2510.3-102(a)(1) of the Department of Labor's Regulations (29 C.F.R. § 2510.3-102(a)(1)) defines a plan asset as "amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the

earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets."

52. Section 3(21)(A) of ERISA (29 U.S.C. § 1002(21)(A)) provides that "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of plan assets . . . ."

53. Section 404(a)(1) of ERISA (29 U.S.C. § 1104(a)(1)) requires that a fiduciary act "for the exclusive purpose of providing benefits to the participants and beneficiaries" and act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

54. Upon information and belief, Staples, as the Managing Member of IT Chicago, withheld elective deferrals from employees' paychecks for hours worked during the months of December 2025 and January 2026.

55. Upon information and belief, Staples, in his capacity as Managing Member of IT Chicago, failed to remit to the Savings Fund the elective deferrals that were withheld from IT Chicago's bargaining-unit employees' paychecks during the months of December 2025 and January 2026 in unknown amounts.

56. Upon information and belief, the withheld Savings Fund deferrals became plan assets on the day they became due and owing to the Savings Fund, the fifteenth (15th) day of the calendar month following the calendar month during which the elective deferrals were withheld.

57. Upon information and belief, Staples consequently became a fiduciary when he failed to

remit timely payment of the Savings Fund deferrals and exercised discretionary authority or control over plan assets.

58. Upon information and belief, as a result of his failure to remit timely payment of the elective deferrals to the Savings Fund, Staples breached his fiduciary duties to the Savings Fund, as he failed to act for the exclusive purpose of providing benefits to the participants when he failed to remit timely payment of the Savings Fund deferrals.

59. Upon information and belief, Staples also failed to act with the requisite care, skill, prudence and diligence imposed upon him by ERISA when he failed to remit timely payment of the Savings Fund deferrals to the Savings Fund.

60. The Savings Fund has been required to employ the undersigned attorneys to collect the monies that are due and owing from Staples.

61. Staples is obligated to pay the reasonable attorney's fees and court costs incurred by the Savings Fund pursuant to the CBA, Savings Fund's Trust Agreement, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE,** the Savings Fund respectfully requests:

A. That this Honorable Court enter an order requiring Staples to submit reports to the Savings Fund detailing the elective deferrals withheld for the months of December 2025 and January 2026;

B. That Judgment be entered in favor of the Savings Fund and against Staples for all elective deferrals, liquidated damages, and interest found to be due and owing based on the reports showing elective deferrals for the months of December 2025, January 2026, or any other months in which deferrals were withheld but not remitted to the Savings Fund;

C. That Judgment be entered in favor of the Savings Fund and against Staples for any and all unpaid elective deferrals, along with the resulting liquidated damages and interest, that are found to be due and owing in addition to the amounts referenced in Paragraph B above;

D. That Defendant Staples be ordered to pay reasonable attorney's fees and costs incurred by the Savings Fund pursuant to the CBA, the Savings Fund Trust Agreement, and 29 U.S.C. § 1132(g)(2)(D); and

E. That the Savings Fund have such other and further relief as the Court may deem just and equitable, all at Defendant Staples's cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

## COUNT IV
## COMMON LAW TORTIOUS CONVERSION

62. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-61 of this Complaint with the same force and effect as if fully set forth herein.

63. The Union is a labor organization whose duly authorized officers or agents are engaged in representing or acting for employee members within this judicial district.

64. At all times material herein, IT Chicago has been signatory to the CBA with the Union.

65. Among the obligations created by the CBA was that IT Chicago would make certain payroll deductions from its bargaining-unit employees' paychecks for payment of Union dues and remit such monies to the Treasurer of the Union or other such person designated by the Union.

66. Pursuant to the provisions of the CBA, IT Chicago is required to deduct dues from participating bargaining-unit employees and remit such dues to the Union no later than the twentieth (20th) day of the following month after such deductions were made.

67. Upon information and belief, IT Chicago deducted $686.50 in required payroll deductions from its bargaining-unit employees' paychecks for the months of February 2026 through

July 2026.

68. The Union had legal title to these required payroll deductions and the right to possess the payroll deductions pursuant to the CBA and properly executed authorization forms.

69. IT Chicago failed to remit the $686.50 to the designated depository as required by the CBA.

70. By failing to remit the payroll deductions to the Treasurer of the Union, or such person designated by the Union, as required, IT Chicago breached its obligation under the CBA.

71. Once deducted from the bargaining-unit employees' paychecks, the payroll deductions became the property of the Union at the end of the month in which the deductions were made, and the Union had an immediate, unqualified right to then possess the payroll deductions resting on a superior claim of title.

72. At all times material herein, Defendant Staples was the Manager and Member of IT Chicago.

73. In such capacity or capacities, Staples was responsible for IT Chicago's compliance with the obligations and duties set forth in the CBA, including ensuring that all wages were properly paid, all payroll deductions were properly made and withheld, and that said payroll deductions were timely remitted to the Union's Treasurer, or such person designated by the Union.

74. In such capacity or capacities, Staples, intending to interfere with the Union's possession, made the decision not to transmit $686.50 in contractually required payroll deductions taken from the paychecks of IT Chicago's bargaining-unit employees for the months of February 2026 through July 2026 to the Union's Treasurer or such person designated by the Union.

75. The required payroll deductions were not transmitted to the Treasurer, or such person

designated by the Union, but were instead withheld from the Union without authorization.

76. The Union has made demand for IT Chicago to transmit the payroll deductions, but Staples has not caused IT Chicago to comply.

77. Staples was ultimately responsible for the decision to not remit the wage deductions, appropriated and exercised dominion over these deductions for his own use, or IT Chicago's use and benefit, in exclusion, denial, and defiance of the Union's rights to possess and use the deductions, and/or withheld these deductions in its possession under a claim and title inconsistent with the Union's own and its representative capacity on behalf of IT Chicago's bargaining-unit employees, and is, therefore, personally liable for the monies which would have been paid to the Union.

78. Defendant Staples's actions were the legal cause of the Union's loss of the payroll deductions, and it has suffered damage by loss of the payroll deductions.

**WHEREFORE,** Plaintiffs respectfully request:

A. That Judgment be entered in favor of the Union and against Staples for unpaid payroll deductions totaling $686.50 for the months of February 2026 through July 2026;

B. That this Honorable Court enter Judgment in favor of the Union and against Staples for any amounts discovered to be owed in addition to those set forth in Paragraph A above;

C. That Staples pay the Union statutory post-judgment interest on all principal deductions found due by this Order;

D. That Staples be ordered to pay the reasonable attorney's fees and costs incurred by the Union; and

E. That the Union have such other and further relief as this Court finds just and equitable, all at Staples's cost.

**COUNT V**
**VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT –**
**IT CHICAGO AS EMPLOYER PURSUANT TO 820 ILCS 115/2**

79. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-78 of this Complaint with the same force and effect as if fully set forth herein.

80. IT Chicago pays wages to members of the Union for work undertaken at the International Towers Building.

81. Pursuant to 820 ILCS 115/2, the members of the Union performing work at the International Towers Building who were paid wages by IT Chicago were employees of Defendant IT Chicago.

82. Pursuant to 820 ILCS 115/2, Defendant IT Chicago is the employer of the members of the Union performing work at the International Towers Building to whom it paid wages.

83. Pursuant to properly executed authorization forms, IT Chicago was required to deduct union dues from its bargaining-unit employees' wages and remit such monies to the Treasurer of the Union or other such person designated by the Union.

84. Upon information and belief, IT Chicago deducted $686.50 in union dues from its bargaining-unit employees' wages for the months of February 2026 through July 2026, but failed to remit the payroll deductions to the Union's Treasurer or other individual designated by the Union.

85. IT Chicago's failure to remit union dues deducted from its bargaining-unit employees' wages for the months of February 2026 through July 2026 constitutes a failure to pay wages earned by the members of the Union.

86. As the employer of its employees performing work at the International Towers Building, IT Chicago may be held liable for wages and final compensation.

**WHEREFORE,** Plaintiffs respectfully request:

A. That Judgment be entered in favor of the Union and against IT Chicago for unpaid payroll deductions totaling $686.50 for the months of February 2026 through July 2026;

B. That this Honorable Court enter Judgment in favor of the Union and against IT Chicago for any amounts discovered to be owed in addition to the amount set forth in Paragraph A above;

C. That IT Chicago be ordered to pay the Union statutory penalties provided at 820 ILCS 115/14;

D. That IT Chicago be ordered to pay the Union post-judgment interest on all principal deductions as found due by this Order;

E. That IT Chicago be ordered to pay the reasonable attorney's fees and costs incurred by the Union; and

F. That the Union have such other and further relief as this Court finds just and equitable all at IT Chicago's cost.

**COUNT VI**
**VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT –**
**EUGENE STAPLES AS OFFICER PURSUANT TO 820 ILCS 115/13**

87. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-86 of this Complaint with the same force and effect as if fully set forth herein.

88. IT Chicago pays wages to members of the Union for work undertaken at the International Towers Building pursuant to employment agreements.

89. Pursuant to 820 ILCS 115/2, the members of the Union performing work at the International Towers Building who were paid wages by IT Chicago were employees of Defendant IT Chicago.

90. Pursuant to 820 ILCS 115/2, Defendant IT Chicago is the employer of the members of the Union performing work at the International Towers Building to whom it paid wages.

91. Pursuant to properly executed authorization forms, IT Chicago was required to deduct union dues from its bargaining-unit employees' wages and remit such monies to the Treasurer of the Union or other such person designated by the Union.

92. Upon information and belief, IT Chicago deducted $686.50 in union dues from its bargaining-unit employees' wages for the months of February 2026 through July 2026, but failed to remit the payroll deductions to the Union's Treasurer or other individual designated by the Union.

93. IT Chicago's failure to remit union dues deducted from its bargaining-unit employees' wages for the months of February 2026 through July 2026 constitutes a failure to pay wages earned by the members of the Union.

94. At all times material herein, Defendant Staples was the Manager and Member of IT Chicago.

95. In his capacity as Manager and Member of IT Chicago, and at all times relevant to this action, Staples constituted an officer of IT Chicago pursuant to 820 ILCS 115/13.

96. Staples knowingly permitted IT Chicago to violate the Illinois Wage Payment and Collection Act by failing to remit the payroll deductions for the months of February 2026 through July 2026 to the Treasurer of the Union or such person designated by the Union.

97. Pursuant to 820 ILCS 115/13, Staples, as an officer of IT Chicago, may be held individually liable for wages and final compensation owed to IT Chicago's employees performing work at the International Towers Building.

**WHEREFORE,** Plaintiffs respectfully request:

A. That Judgment be entered in favor of the Union and against Staples for unpaid payroll deductions totaling $686.50 for the months of February 2026 through July 2026;

B. That this Honorable Court enter Judgment in favor of the Union and against Staples for any amounts discovered to be owed in addition to the amount set forth in Paragraph A above;

C. That Staples be ordered to pay the Union statutory penalties provided at 820 ILCS 115/14;

D. That Staples be ordered to pay the Union post-judgment interest on all principal deductions as found due by this Order;

E. That Staples be ordered to pay the reasonable attorney's fees and costs incurred by the Union; and

F. That the Union have such other and further relief that as Court finds just and equitable, all at Staples's cost.

Respectfully Submitted,

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 399 HEALTH & WELFARE TRUST *et al.***

/s/ William M. Blumthal, Jr. – 6281041
One of the Plaintiffs' Attorneys
JOHNSON & KROL, LLC
141 W. Jackson Boulevard, Suite 2055
Chicago, Illinois 60604
(312) 757-5477
blumthal@johnsonkrol.com